

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
JAMAL EARLE,

                    Plaintiff,              16 CV 0171 (SJ) (RL)

   v.

                                              <u>MEMORANDUM</u>
                                              <u>AND ORDER</u>

THE CITY OF NEW YORK, *et al.*,

                    Defendants.
--------------------------------------------------X

APPEARANCES

ELEFTERAKIS ELEFTERAKIS & PANEK
80 Pine Street, 38th Floor
New York, NY 10005
(212) 532-1176
By:    Baree N. Fett
*Attorney for Plaintiff*

LAW OFFICE OF JEFFREY I. WEINER
7 Penn Plaza, Ste. 420
New York, NY 10001
(212) 951-1999
By:    Jeffrey I. Weiner
*Attorney for Plaintiff*

NEW YORK CITY LAW DEPARTMENT
CORPORATION COUNSEL
100 Church Street, 3-173b
New York, NY 10007
(212) 356-2572
By:    Angharad K. Wilson
*Attorney for Defendant*

**JOHNSON, Senior District Judge:**

Plaintiff Jamal Earle ("Plaintiff" or "Earle") brings this action pursuant to 42 U.S.C. § 1983 against the City of New York and New York City Police Department ("NYPD") Officers Anthony Rivelli ("Rivelli") and David Perez ("Perez") (collectively "Defendants").[1] Plaintiff alleges claims of (1) unlawful seizure; (2) false arrest; (3) excessive force; (4) malicious prosecution; (5) denial of the constitutional right to a fair trial based upon fabrication of evidence; (6) First Amendment retaliation; and (7) failure to intervene. (Dkt. No. 1.) Defendants now move for summary judgment on all claims. Plaintiffs move for partial summary judgment on the fabrication of evidence claim alone. Based on the following reasons and the parties' submissions, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** and Plaintiff's motion for summary judgment is **DENIED**.

### I. Background Facts

On February 20, 2014, Earle was in the Department of Motor Vehicles ("DMV") in Jamaica, Queens to contest a traffic summons he had

---

[1] Plaintiffs have withdrawn their claims against NYPD Sergeant Steven Crozier, NYPD Police Officer Marc Rudon, NYPD Police Officer Anthony O'Toole, and NYPD Police Officer Rohan Shaw.

2

P-049

received months prior from Officer Rivelli. Earle and Rivelli both testified before the administrative law judge who ultimately found against Earle and ordered him to pay a $203.00 fine. Afterward, Earle left the hearing room and made his way toward the elevator. Officer Rivelli exited the hearing room seconds after Earle.

Both sides argue that the video surveillance footage capturing the altercation supports their version of events. Earle claims that shortly after he left the hearing room, Rivelli shouted "hey you," causing him to turn around, and "come here," to which he complied. (Dkt. No. 63-1 at 59.) He walked toward Rivelli who then allegedly "sucker-punched" him in the head, unprovoked. (Dkt. No. 62 at 2.)

Officer Rivelli's version of the events is considerably different. Rivelli states that after he left the hearing room, Earle turned around, approached the officer, "shoved him with both hands," and "raised his left hand toward Rivelli as though he was going to strike Rivelli." (Dkt. No. 53 at 3.) Rivelli states that only in response to this attack did he "[strike] plaintiff on the left side of plaintiff's head." (*Id.* at 4.)

The surveillance footage shows that shortly after the altercation, several officers rushed to aid Rivelli and subdued Earle. (Dkt. No. 63-3.) As the officers approached, Earle appeared to see them, remained still, and

3

P-049

raised both of his arms out to the side where they grabbed him. (*Id.*) Earle remained still as the officers seized him, however, when Rivelli unholstered his pepper spray and raised the cannister to Earle's face, Earle quickly ducked his head and was taken to the ground by the officers. (*Id.*)

Officer Perez—who was inside the hearing room at the time the physical altercation started—was one of the officers that responded to the commotion. Other officers had already taken Earle to the ground by the time Perez reached them. (*Id.*) Perez then handcuffed Earle and was designated the arresting officer by a superior officer. (Dkt. No. 55 at Ex. G.) Perez booked Earle at the 105th Precinct in Queens, where he was held for 28 hours before being released on his own recognizance. (Dkt. No. 63-4.) The Queens District Attorney's office brought charges against Earle for resisting arrest, obstructing governmental administration, and disorderly conduct. (Dkt. No. 63-7.) The charges were ultimately dropped thirteen months later "in the interest of justice." (*Id.*)

In support of the charges against Earle, Perez and Rivelli submitted sworn criminal complaints to the New York State Criminal Court in the County of Queens. (Dkt. Nos. 63-5, 6.) Officer Perez stated, in relevant part, that "he [was] informed by [Rivelli], that…[Earle], ran towards [Rivelli] and began fighting," that he "observed [Earle] and [Rivelli] struggling on the

4

floor," and that Earle "flailed his arms in an attempt to avoid being handcuffed." (Dkt. No. 63-5.) Rivelli's sworn statement states, in relevant part, that "upon exiting the courtroom [Earle] swung his arm with a closed fist at him," and that Earle "flailed his arms and kicked his legs in an attempt to avoid being handcuffed." (Dkt. No. 63-6.)

## II. Legal Standard

A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. *See Anderson*, 477 U.S. at 248. An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. (*Id.*) In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citing *Anderson*, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper,

P-049

and the motion must be denied. *See Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. (*Id.* at 247–48.) Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *Id.* at 248; *see also Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

### III. Discussion

#### A. Defendant's Motion for Summary Judgment

##### 1. Officer Rivelli

The arguments underlying Defendants' motion as to Officer Rivelli are largely predicated on Defendants' interpretation of the facts—*i.e.* that

Earle attacked Officer Rivelli. However, it is by no means clear from the video that Earle ever "shoved" Rivelli or raised his hand "as though he was going to strike Rivelli." (Dkt. No. 53 at 3.) Defendants characterize Earle's interpretation of the surveillance footage as "shocking," (Dkt. No. 59 at 1.), however, at times, Defendants' own interpretation of the video is highly questionable. For example, Defendants state that "[i]t cannot be disputed that plaintiff approached Rivelli…and initiated a physical altercation by shoving Rivelli and swinging his arms in an attempt to land blows." (Dkt. No. 53 at 23.) Indeed, it is disputed. After careful review of the video footage, the Court finds that a reasonable finder of fact could certainly credit Earle's account over Rivelli's, or vice versa—the very definition of a genuine issue of material fact.

The distance, picture quality, and angle of the footage make it difficult to confirm the precise sequence of events. Moreover, the video tends to support certain assertions made by Earle. For example, the video shows three bystanders simultaneously turning their heads to look at Rivelli shortly after he exits the hearing room. (Dkt. No. 63-5.) This supports Earle's claim that he turned around in response to Officer Rivelli shouting at him. Defendants make no mention of how Earle knew Rivelli

7

P-049

was behind him, but rather state "[a]fter noticing Officer Rivelli behind him, plaintiff turned around…." (Dkt. No. 53 at 3.)

Nor does the video confirm that Earle ever pushed Rivelli. In fact, a jury could reasonably conclude that Rivelli was the first to make contact by placing his left hand on Earle's chest. (Dkt. No. 63-5.) While Defendants maintain that Earle "shoved Rivelli with both hands," the video clearly shows that Earle is holding a rather large object in his right hand from the time he leaves the hearing room, through the entire altercation with Rivelli. (*Id.*) Common sense suggests that if Earle intended to start a physical altercation by shoving Rivelli with both hands, he likely would have made his hands free—much like Rivelli did as he approached Earle. (*Id.*) While Earle is facing away from the camera for most of the scuffle, the video does show his hands being raised to chest level. (*Id.*) Presumably, this is the moment that Defendants argue that Earle pushed Rivelli. However, a reasonable juror could conclude that Earle merely lifted his hands to his chest after being grabbed there by Rivelli. It is similarly unclear from the video whether Earle ever raised his hand "as though he was going to strike Rivelli." For a brief moment, Earle's hand was raised, but it is unclear if this was an act of aggression or in response to Rivelli's hand on his chest. Moreover, it is unclear whether Rivelli began his punch before or after

Earle's hand lifted. (*Id.*) In short, Defendants' position is highly and reasonably in dispute.

Because a reasonable juror could disagree with the facts put forward by Defendants, the legal arguments resting on those facts are without merit for the purpose of summary judgment. Accordingly, Defendants fail to demonstrate that summary judgment is warranted as a matter of law as to Officer Rivelli. However, because Rivelli is the officer alleged to have directly violated Earle's constitutional rights, the failure to intervene claim against him is dismissed. *See Jackson v. City of New York*, 939 F. Supp. 2d 219, 232 (E.D.N.Y. April 16, 2013) ("The Court has already concluded…that [the officers] both may be held liable under a theory of direct participation, therefore neither would be held liable for failure to intervene."); *Simon v. City of New York*, 2011 WL 317975, at *12 (E.D.N.Y. Jan. 3, 2011) ("[Plaintiff's] factual allegations do not support the assertion that either of these two officer failed to intervene because these same officers actually arrested [Plaintiff]."); *Morgan v. County of Nassau*, 2010 WL 2634125, at *9 (E.D.N.Y. July 01, 2010) (dismissing failure to intervene claim against officer "particularly in light of the fact that [the officer] is alleged himself to have used excessive force….").

### 2. Officer Perez

As to Officer Perez, Defendants' arguments are more persuasive. As an initial matter, Perez had probable cause to arrest Earle as Perez was entirely reasonable in relying on information relayed to him by Officer Rivelli. *See Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 436 (S.D.N.Y. 2016) ("probable cause exists if a law enforcement officer [] received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity."); *Annunziata v. City of New York*, No. 06-CV-7637, 2008 U.S. Dist. LEXIS 42097 (S.D.N.Y. May 28, 2008) (finding that an officer lacking personal knowledge to establish probable cause may rely on information provided by fellow officers). Perez was inside the hearing room at the outset of the altercation between Earle and Rivelli. (Dkt. No. 55 at Ex. G.) He heard a commotion, came outside, and observed the two of them in a tense standoff. (*Id.*) Even if Officer Rivelli was the initial and sole aggressor, Perez would have no way of knowing this. Requiring an officer in Perez' situation to question the motives and veracity of his fellow officer in a rapidly evolving situation would make everyday policework near impossible. If Rivelli fabricated information, it is he that must be held accountable, not Perez absent any evidence that he should have questioned

Rivelli's truthfulness. Accordingly, the claim for false arrest against Perez cannot stand and is dismissed.

Second, the claim of excessive force against Perez for the force used to handcuff Earle also fails as a matter of law. To succeed on that claim, Earle must show that Perez "used more force than was necessary to subdue him." *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003). Perez witnessed Earle being taken to the ground by multiple officers and assisted by placing handcuffs on him. Earle does not allege that he sustained any injury at all as a result of the handcuffing. While not always sufficient to disprove a claim of excessive force, in these circumstances—*i.e.*, responding to a quickly evolving physical altercation between an officer and a suspect—the lack of injury is dispositive. *See Graham v. Connor*, 490 U.S. 386, 396-7 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation"); *Washpon v. Parr*, 561 F. Supp. 394, 407 (S.D.N.Y. 2008) ("*de minimis* injury can serve as conclusive evidence that *de minimis* force was used"); *Lynch ex rel. v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) ("[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: (1) the

handcuffs were unreasonably tight; (2) the defendants ignored…pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists."). Therefore the claim of excessive force as to Perez is dismissed.

Third, Plaintiff's claims against Perez for malicious prosecution and fabrication of evidence also fail as a matter of law. As stated *supra*, regardless of whether Rivelli's version of events were accurate, Perez had probable cause to arrest Earle based on information obtained from Rivelli and his own observations. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("[P]robable cause is a complete defense to a constitutional claim of malicious prosecution.").

As to fabrication of evidence, contrary to Plaintiff's submissions, Perez never claimed to have *seen* Earle run toward Rivelli and "beg[in] fighting" with him, but rather his criminal complaints states that, "he is *informed* by police officer Anthony Rivelli" that these events took place—by all accounts a true statement. (Dkt. No. 63-5 (emphasis added).)

Further, the claim that he "observed [Earle and Rivelli] struggling on the floor," is inaccurate only so far as it was not Rivelli, but other officers that were on the floor with Earle. (*Id.*) As Perez did see Earle on the ground with police officers, the error is immaterial as it is not "likely to influence a jury's decisions," *Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d

P-049

Cir. 2012), nor impact "the prosecutor's decision to pursue charges." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016). That only leaves Perez' claim that Earle "flailed his arms in an attempt to avoid being handcuffed." (Dkt. No. 63-5.) Alone, this statement cannot support a claim for intentional fabrication of evidence. While the degree to which Earle resisted is disputed, the video surveillance does show both his arms and legs in motion while Perez was attempting to place him in handcuffs. (Dkt. No. 63-3.) Thus, the disagreement among the parties is more linguistic than substantive. As such, the Plaintiff's case against Perez for fabrication of evidence "is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential*, 22 F.3d at 1224. Accordingly, that claim is dismissed.

The claim against Perez for failure to intervene is also dismissed. "An officer may be held liable for preventable harm caused by the actions of other officers, if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean–Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y.2008). Here, the key question underlying Plaintiff's constitutional claims—and thereby the predicates for

P-049

the failure to intervene claim—is whether it was Rivelli or Earle who initiated the physical altercation. There is no dispute that Officer Perez was in a different room when the altercation began. Thereby, even if Rivelli attacked Earle unprovoked, a "reasonable person in [Perez'] situation would [not] know that [Earle's] constitutional rights were being violated." (*Id.*) To have intervened on Earle's behalf, Perez would have had to assume—without evidence—that Officer Rivelli was lying to him. No rational juror could assign this unrealistic burden onto Officer Perez and therefore summary judgment on the claim is granted.

### B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's motion for partial summary judgment on the claim for fabrication of evidence is denied as to both Officers Perez and Rivelli. As discussed, *supra*, the claim against Officer Perez for fabrication of evidence is dismissed. And while the fabrication of evidence claim against Officer Rivelli has more merit, the Court cannot grant summary judgment based on the evidence in the record alone. To prevail on a claim of fabrication of evidence, Plaintiff must demonstrate: "an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Hicks v. Marchman*, 17

CV 615, 719 Fed. Appx. 61, at 63-64 (2d Cir. Jan. 5, 2018). Plaintiff cannot prevail at this stage because there is a genuine dispute as to whether Rivelli truly "fabricated" the information in the criminal complaint.

In the criminal complaint, Rivelli states that Earle "swung his arm with a closed fist at him," and that Earle "flailed his arms and kicked his legs" while Rivelli attempted to place handcuffs on him. (Dkt. No. 63-6.) As discussed, *supra*, the distance, angle, and quality of the surveillance footage make it impossible for the Court to determine whether Earle ever threw a punch at Officer Rivelli. The Court has highlighted discrepancies between the video and Defendants' interpretation of the events. However, because Earle's back is to the camera and his hands are not visible for most of the physical altercation, the Court cannot rule as a matter of law that Earle did not "sw[ing] his arm with a closed fist," at some point.

As to the latter statement—regarding the flailing of arms and legs during handcuffing—Plaintiff argues that summary judgment is appropriate because the video demonstrates that Rivelli never attempted to handcuff Earle. (Dkt. No. 61 at 2.) This argument fails for two reasons. First, the video footage submitted to the court by Plaintiff is quite simply inconclusive. After Earle is taken to the ground, a swarm of police officers blocks his body from sight. By the time the footage ends, Earle has only

15

been on the ground for about five seconds and it is entirely unclear to the viewer whether he is in handcuffs at this point. (Dkt. No. 63-3.) Second, even assuming Rivelli was not involved in the handcuffing, there is still a genuine dispute as to whether he intentionally fabricated evidence, or whether this statement was an unintentional error. Therefore, this is a matter to be determined by a factfinder.

### IV. Conclusion

For the foregoing reasons: 1) Defendants' Motion for Summary Judgment is **GRANTED** as to all claims against Officer Perez and as to the failure to intervene claim against Officer Rivelli; 2) Defendant's Motion for Summary Judgment is **DENIED** as to all other claims against Officer Rivelli, and; 3) Plaintiff's Motion for Summary Judgment is **DENIED**.

**SO ORDERED.**

Dated: March 10, 2020  
Brooklyn, NY

s/ Sterling Johnson, Jr.
_____
Sterling Johnson, Jr., U.S.D.J.